Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Putative Class Members*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.A.R.R., et al., | Case No. 5:25-cv-02474-JGB-DTB |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | Hearing Date: February 9, 2026 |
| ROKU, INC., | Hearing Time: 9:00 a.m. |
| | Judge: Hon. Jesus G. Bernal |
| Defendant. | Court Room: 1 |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

i

1

# Table of Contents

2

**Page**

3  I.   INTRODUCTION ....................................................................1

4
5  II.  LEGAL STANDARD ............................................................3

6  III. ARGUMENT ........................................................................4

7
8       A.   Roku bears the burden to show a valid arbitration agreement binds Plaintiffs. ........................................................................4

9
10      B.   Roku's equitable estoppel theories do not apply to Plaintiffs' claims. ..................................................................................6

11
12           1.   A family relationship does not create authority to submit to binding arbitration in this context…………………………....8

13           2.   Roku cannot show that Plaintiffs "knowingly exploited" the contract in the way equitable estoppel requires………………..11

14           3.   Intertwined claims estoppel is inapplicable in this context……12

15
16
17      C.   Delegation is improper where Plaintiffs did not agree to submit the question of arbitrability to the arbitrator........................................14

18
19  IV.  CONCLUSION ....................................................................15

20
21
22
23
24
25
26
27
28  PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

**Table of Authorities**

**Page(s)**

**Cases**

*Adzhikosyan v. AT&T Corp.*,
    2021 WL 5982604 (C.D. Cal. Dec. 17, 2021) ......................................7, 8

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
    785 F.3d 1320 (9th Cir. 2015) .................................................................3

*B.F. by & through Fields v. Amazon*,
    2019 WL 9364164 (W.D. Wash. Oct. 21, 2019) ...............................12, 13

*Berg v. Traylor*,
    148 Cal.App.4th 809 (2007) .................................................................12

*Brown v. Comcast Corp.*,
    2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) .......................7, 8, 12, 13

*Chan v. Charter Commc'ns Holding Co.*,
    2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) .........................................9

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024) .........................................................................5, 14

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ...............................4, 11, 12, 13

*County of Contra Costa v. Kaiser Found. Health Plan*,
    47 Cal.App.4th 237 (1996) .....................................................................9

*Crowley Mar. Corp. v. Bos. Old Colony*,
    158 Cal.App.4th 1061 (2008) ............................................................6, 7

*Davis v. Nissan N. Am., Inc.*,
    100 Cal.App.5th 825 (2024) ..................................................................6

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

*DMS Services, LLC v. Superior Court,*
  205 Cal.App.4th 1346 (2012) .................................................................. 6

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995) ................................................................... 3, 14, 15

*Granite Rock Co. v. Int'l Bhd. Of Teamsters,*
  561 U.S. 287 (2010) .................................................................................. 3

*Hill v. Quicken Loans Inc.,*
  2020 WL 5358394 (C.D. Cal. Aug. 5, 2020) ........................................... 3

*Houghton v. Polychain Alchemy, LLC,*
  2025 WL 2965204 (9th Cir. Oct. 21, 2025) ........................................... 14

*Howsam v. Dean Witter Reynolds, Inc.,*
  537 U.S. 79 (2002) .................................................................................... 3

*In re Henson,*
  869 F.3d 1052 (9th Cir. 2017) ..................................................... 4, 6, 7, 10

*In re Ring LLC Privacy Litigation,*
  2021 WL 2621197 (C.D. Cal. Jun. 24, 2021) ........................................ 8, 9

*InfoSpan, Inc. v. Emirates NBD Bank PJSC,*
  2012 WL 12960766, (C.D. Cal. Dec. 7, 2012) ....................................... 13

*Janvey v. Alguire,*
  847 F.3d 231 (5th Cir. 2017) ................................................................. 13

*Kilgore v. KeyBank Nat'l Ass'n,*
  718 F.3d 1052 (9th Cir. 2013) ................................................................. 3

*Knutson v. Sirius XM Radio Inc.,*
  771 F.3d 559 (9th Cir. 2014) ................................................................... 4

*Kramer v. Toyota Motor Corp.,*
  705 F.3d 1122 (9th Cir. 2013) ............................................................... 14

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

*Langell v. Ideal Homes LLC*,
    2016 WL 8711704 (N.D. Cal. Nov. 18, 2016) .......................................... 11

*Mendez v. LoanMe, Inc.*,
    2020 WL 6044098 (S.D. Cal. Oct. 13, 2020) ............................................. 3

*Montoya v. Comcast Corporation*,
    2016 WL 5340651 (E.D. Cal. Sep. 23, 2016) ........................................... 13

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ..................................................................... 7

*Namisnak v. Uber Techs., Inc.*,
    971 F.3d 1088 (9th Cir. 2020) ........................................................... 6, 7, 10

*Norcia v. Samsung Telecomm'ns Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) ..................................................................... 4

*Ramirez v. Charter Communications, Inc.*,
    16 Cal.5th 478 (2024) ................................................................................... 5

*S.G. v. Epic Games, Inc.*,
    2025 WL 2447456 (N.D. Cal. Aug. 26, 2025) ....................................... 9, 10

*Totten v. Kellogg Brown & Root, LLC*,
    152 F. Supp. 3d 1243 (C.D. Cal. 2016) ....................................................... 3

*West v. Solar Mosaic LLC*,
    105 Cal.App.5th 985 (2024) ........................................................................ 4

**Statutes**

Cal. Civ. Code § 1638 .......................................................................................... 5

Cal. Civ. Code § 1641 .......................................................................................... 5

Cal. Civ. Code § 1654 .......................................................................................... 6

Cal. Civ. Proc. Code § 1281.2 ............................................................................. 5

California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 630 ................... 2

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1

Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 ..................... 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

## I.    INTRODUCTION

Defendant Roku, Inc. ("Roku") operates one of the most widely used television content platforms in the nation, integrating its Roku OS into both standalone devices and smart televisions. (Class Action Complaint ("Complaint or "Compl."), ¶ 13, Dkt. 1, Ex. 3.) By purchasing Roku OS enabled devices, users gain access to a variety of programming. Notably, Roku offers all of its users access to The Roku Channel, an ad supported, or ad-free premium, streaming service. (*Id*. at ¶ 15.) Roku knows that a significant portion of its userbase consists of children and advertises its Kids and Family on The Roku Channel as containing thousands of free kids' shows and movies. (*Id*. at ¶ 17.) Thus, there is a variety of children specific content available on The Roku Channel. (*Id*. at ¶ 20.) By creating its massive footprint and offering a variety of children specific content, Roku has created a pervasive presence in homes across the nation. (*Id*. at ¶ 2.) Leveraging that footprint, Roku capitalizes on the collection and monetization of vast quantities of user data. (*Id*. at ¶¶ 2, 3.) Yet, despite representing itself as privacy-conscious, Roku collects, processes, discloses, and aids third parties in the tracking of children's sensitive Personal Information, including voice recordings, location data, IP addresses, and browsing histories in violation of state and federal laws. (*Id*. at ¶ 3.) Critically, Roku refuses to offer child-specific user profiles which not only enables the tracking of children's sensitive information, but also ensures that children are targeted with advertisements based on that data. (*Id*. at ¶ 22.) Roku fails to implement industry standard children's profiles because it knows that implementing such profiles would prevent it from collecting, and prevent third parties from tracking, the sensitive information of its child viewers. (*Id*. at ¶ 23.)

Now, despite Roku's choice to contractually distance itself from its child users in order to monetize their sensitive information, Roku asks this Court to relinquish jurisdiction and compel arbitration, even though Plaintiffs never entered any agreement with Roku to do so. (Motion to Compel Arbitration ("Motion to Compel"),

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1

Dkt. 27.) In support thereof, Defendant makes numerous specious equitable estoppel arguments. All of them fail.

*First*, Roku cannot satisfy its threshold burden to compel arbitration because it has no evidence that these minor Plaintiffs ever agreed to arbitrate with Roku. Assent by their mother to a clickwrap contract does not bind non-signatories, and the Court (not an arbitrator) must decide this gateway issue.

*Second*, even assuming the accountholder agreed to Roku's Terms, Roku's own Dispute Resolution Terms are drafted to govern only disputes "between you and Roku," expressly superseding any other terms and foreclosing Roku's post hoc effort to extend arbitration to household members or other third parties not named in the dispute-resolution language.

*Third*, Roku's equitable-estoppel theories fail because equitable estoppel is narrowly applied under California law and is inapplicable where, as here, Plaintiffs' ECPA/CIPA[1] claims are fully viable without reference to Roku's Terms and seek to enforce independent statutory duties rather than contractual obligations.

*Fourth*, Roku's three specific estoppel variants—preexisting-relationship, direct-benefits, and intertwined-claims—do not fit: family relationship alone does not supply authority to waive minors' rights through arbitration, Plaintiffs did not "knowingly exploit" any contract, and the "intertwined/close relationship" theory does not allow a signatory defendant to compel arbitration against a non-signatory plaintiff in this context.

Equity is not a device for rewriting Roku's contract or manufacturing consent where none exists. If anything, equity requires Roku to answer in this Court for its illicit privacy violations directed at non-signatory child users, not to escape public accountability through an arbitration clause they never accepted. Holding otherwise

---

[1] Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*; California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 630, *et seq.*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

would produce absurd results, allowing any company to bind minors (or any third-party user) to arbitration through an adult's adhesive contract. Accordingly, Defendant's Motion to Compel should be denied.

## II.    LEGAL STANDARD

"Arbitration is strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299 (2010). Before compelling arbitration, the Court must find (1) that "a valid agreement to arbitrate exists and, if it does, (2) [that] the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). The moving party "has the burden under the FAA to show [these two elements]." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

Whether parties to an agreement "have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock*, 561 U.S. at 296 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 93 (2002)). "Courts may only compel arbitration where there are no genuine disputes of material fact surrounding the arbitration agreement's existence." *Hill v. Quicken Loans Inc.*, No. ED CV 19-0163 FMO (SPx), 2020 WL 5358394, at *5 (C.D. Cal. Aug. 5, 2020). On a motion to compel arbitration, "courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Id.* at *4 (quoting *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016)).

Courts generally "apply ordinary state-law principles that govern the formation of contracts" to decide "whether the parties agreed to arbitrate a certain matter (including arbitrability)." *Mendez v. LoanMe, Inc.*, No. 20-cv-00002-BAS-AHG, 2020 WL 6044098, at *4 (S.D. Cal. Oct. 13, 2020) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he 'liberal federal policy regarding the

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

3

scope of arbitrable issues is inapposite' when the question is 'whether a particular party is bound by the arbitration agreement.'" *Norcia v. Samsung Telecomm'ns Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)).

## III.    ARGUMENT

### A.    Roku bears the burden to show a valid arbitration agreement binds Plaintiffs.

Roku correctly framed the first "gateway" inquiry as whether a valid agreement to arbitrate exists. But this gateway issue is for the Court, and Roku bears the burden of proving the existence of a valid arbitration agreement binding the parties it seeks to compel to arbitration. *Norcia*, 845 F.3d at 1283 ("the party seeking to compel arbitration . . . 'bears the burden of proving the existence of an agreement to arbitrate'. . .") (quoting *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014)).[2]

Roku attempts to demonstrate that Plaintiffs entered into an agreement to arbitrate their claims by providing evidence that their mother agreed to Roku's Terms. Although this may establish that an agreement was formed between Roku and the accountholder, it does not establish that Plaintiffs, who did not sign or assent to any agreement with Roku, are bound by Roku's Terms or any agreement to arbitrate their claims. Arbitration is a matter of contract and consent, and absent an agreement, a party cannot be required to arbitrate his claims. *West v. Solar Mosaic LLC*, 105 Cal.App.5th 985, 992 (2024) ("[w]hen a party to a civil action asks the trial court to compel arbitration of the pending claim, the court must determine whether an

---

[2] California law applies to this dispute because Plaintiffs and Roku never agreed that Delaware law would govern disputes between them. To apply any law other than California would be error. *See In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017) (stating the district court erred by applying New York law based on a choice of law provision that the petitioners never agreed to, and where respondent conceded there is no material difference between New York and California law); (Motion to Compel at p. 13 n. 3) ("There is no material difference between the applicable law of those jurisdictions").

1    agreement to arbitrate the controversy exists") (internal quotation omitted); *see also*
2    Cal. Civ. Proc. Code § 1281.2. Roku's Motion to Compel fails this threshold issue
3    because it does not, and cannot, show that Plaintiffs entered into an arbitration
4    agreement.

5        Assuming arguendo that Roku's Terms are relevant and were agreed to by
6    Plaintiffs' mother, those terms still foreclose Roku's attempt to bind non-parties to
7    Roku's dispute resolution scheme. Roku's Dispute Resolution Terms expressly
8    provide that they "SUPERSEDE AND REPLACE ALL PRIOR TERMS FOR
9    RESOLVING DISPUTES BETWEEN YOU AND ROKU[.]" (Declaration of Julian
10   Riediger in Support of Roku Motion to Compel Arbitration ("Riediger Decl.") ¶ 7,
11   Ex. D at § 1.) That supersession language means that, to the extent Roku points to
12   other provisions elsewhere in its catalogue of adhesive terms to broaden the scope of
13   dispute resolution, those provisions are displaced for purposes of "RESOLVING
14   DISPUTES BETWEEN YOU AND ROKU," and the Court must enforce the
15   controlling dispute resolution terms as written. *Coinbase, Inc. v. Suski*, 602 U.S. 143,
16   148 (2024) ("the first question in any arbitration dispute must be: What have these
17   parties agreed to?"). And Roku's Dispute Resolution Terms repeatedly confirm their
18   limited scope: they "apply to all [c]laims *between you and Roku*," to the exclusion of
19   any other parties. (Riediger Decl., Ex. D §§ 1, 1.A.) (emphasis added).

20       California law requires the Court to give effect to that clear limiting language
21   (and to read the dispute resolution terms as an integrated whole), not to expand Roku's
22   chosen Dispute Resolution Terms to add additional covered parties after the fact. *See*
23   Cal. Civ. Code §§ 1638, 1641; *Ramirez v. Charter Communications, Inc.*, 16 Cal.5th
24   478, 516 (2024) ("[c]ourts cannot rewrite agreements and impose terms to which
25   neither party has agreed") (internal quotation omitted). If Roku believed household
26   members, children of account holders, or other third parties should be bound to
27   Roku's dispute-resolution procedures, it could have drafted its Dispute Resolution
28   PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
     TO COMPEL ARBITRATION

1   Terms to say so; it did not. At minimum, any claimed ambiguity about whether
2   Roku's bilateral "between you and Roku" dispute-resolution language binds non-
3   signatories must be construed against Roku as the drafter. *See* Cal. Civ. Code § 1654.

4       **B.    Roku's equitable estoppel theories do not apply to Plaintiffs' claims.**

5       Roku argues that equity requires non-signatory minor Plaintiffs to arbitrate
6   their claims. However, under California law (which governs this dispute), equitable
7   estoppel is narrow and only applied in limited circumstances. *See Davis v. Nissan N.*
8   *Am., Inc.*, 100 Cal.App.5th 825, 834 (2024) ("Although there is a strong public policy
9   in favor of arbitration, there is no policy compelling anyone to accept arbitration of
10  controversies which they have not agreed to arbitrate"); *see also Id*. ("Because
11  arbitration is a matter of contract, the basic rule is that one must be a party to an
12  arbitration agreement to be bound by it or invoke it—with limited exceptions") (citing
13  *DMS Services, LLC v. Superior Court* 205 Cal.App.4th 1346, 1352-53 (2012)).

14      Such theories of equity generally apply only where the plaintiff seeks to hold a
15  non-signatory liable based on duties imposed by the contract containing the arbitration
16  clause, or where the claims are intimately founded in and intertwined with the
17  contract, or where alleged "concerted misconduct" is founded in or intimately
18  connected with contractual obligations. *See In re Henson*, 869 F.3d 1052, 1060-62
19  (9th Cir. 2017) (summarizing California equitable estoppel doctrines). Furthermore,
20  Ninth Circuit precedent demonstrates that "equitable estoppel is 'inapplicable where
21  a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term
22  or condition' imposed by the contract." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088,
23  1095 (9th Cir. 2020) (quoting *In re Henson*, 869 F.3d at 1060). In other words, where
24  "the claims are fully viable without reference to the terms of th[e] agreements,"
25  equitable estoppel does not apply. *Namisnak*, 971 F.3d at 1095. Defendant's own cited
26  authority, *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co*., confirms this distinction,
27  and this Court should enforce it here. 158 Cal.App.4th 1061, 1070 (2008) ("[a]

28  PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
    TO COMPEL ARBITRATION

common theme in these [non-signatory arbitration] cases is that the party seeking relief was suing on the contract itself, *not a statute* or some other basis outside the contract") (emphasis added).

Here, Plaintiffs do not rely on Defendant's Terms to assert their claims. Rather, Plaintiffs rely entirely on the ECPA and CIPA, and Defendant's illicit tracking and disclosure of children's statutorily protected information. Thus, Roku's Motion to Compel asks the Court to stretch estoppel beyond its narrow purpose—to bind non-signatory minor Plaintiffs based on mere household use. That expansion is neither equitable nor consistent with controlling California and Ninth Circuit authority, and it should be rejected. *See Adzhikosyan v. AT&T Corp.*, No. 2:21-cv-05997-ODW (MRWx), 2021 WL 5982604, at *6 (C.D. Cal. Dec. 17, 2021) (holding that equitable estoppel does not apply where plaintiff relies entirely on CIPA, and not the defendant's terms of service, to bring his claims); *Namisnak*, 971 F.3d at 1095 (holding that equitable estoppel does not apply where the plaintiffs' ADA claims are fully viable without any reference to the defendant's terms and conditions); *In re Henson*, 869 F.3d at 1061 (holding that equitable estoppel does not apply where plaintiff's allegations that defendant committed numerous privacy violations, including using "[c]lass members' personal, private, and confidential data for commercial gain without their knowledge or consent[,]" "are not based on the . . . [a]greement"); *see also Id.* at 1061 n.5 (noting that "many of the California cases permitting non-signatories to compel arbitration under an equitable estoppel theory involve contract-based causes of action, such as tortious interference or breach of contract"); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1231 n.7 (9th Cir. 2013) ("equitable estoppel is particularly inappropriate where plaintiffs seek the protection of consumer protection laws against misconduct that is unrelated to any contract except to the extent that a customer service agreement is an artifact of the consumer-provider relationship itself"); *Brown v. Comcast Corp.*, No. 16-cv-00264-AB (SPx),

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

2016 WL 9109112, at *8 (C.D. Cal. Aug. 12, 2016) (declining to bind plaintiff to arbitration under a theory of equitable estoppel because "by this same logic, every time a person uses services such as cable or Internet at another person's residence, no matter how long the use was, he or she would be bound to the underlying service agreement in perpetuity because the use of services would be considered a direct benefit").

Despite the fact that equitable estoppel is plainly inappropriate in this context, Defendant forwards three doctrines claiming they require Plaintiffs to arbitrate: (1) preexisting-relationship estoppel; (2) direct benefits estoppel; and (3) intertwined-claims estoppel. Each theory should be rejected.

1.   <u>A family relationship does not create authority to submit to binding arbitration in this context.</u>

Roku argues that the terms of its dispute resolution procedures must be enforced against non-signatory Plaintiffs because they have a "preexisting" parent-child relationship. (Motion to Compel at pp. 15-16.) But, California courts do not treat family status, by itself, as authority to waive another person's rights through arbitration. *See Adzhikosyan*, 2021 WL 5982604, at *6 ("the existence of such a preexisting relationship does not make compelling arbitration automatic"); *In re Ring LLC Privacy Litigation*, No. 19-cv-10899-MWF (RAOx), 2021 WL 2621197, at *8 (C.D. Cal. Jun. 24, 2021) (refusing to bind non-signatory children to their parents' adhesion contracts for consumer goods that contained arbitration provisions).

For example, in *In re Ring LLC Privacy Litigation*, a factually analogous case, Ring attempted to compel the claims of non-purchaser minor plaintiffs to arbitration based on the arbitration clause accepted by the purchaser/accountholder. 2021 WL 2621197, at *7. There, Ring manufactured and sold home security and smart-home devices (including video doorbells, security cameras, and alarms), along with protection plans through which customers purchased additional services and device-

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

8

related benefits. *In re Ring LLC Privacy Litigation*, 2021 WL 2621197, at *1. The complaint alleged that, through Ring's services, Ring disclosed sensitive personally identifying information without proper authorization., *Id*. at *1. Ring argued—pointing to authority concerning a parent's ability to contract for services on behalf of a child—that the minors' "preexisting relationship" with the purchaser plaintiff made it equitable to enforce arbitration against them. *Id.* at *7. The Central District of California rejected that attempt to expand estoppel, explaining that it was "unconvinced that the authority to contract for goods beyond necessities like education or medical care is implicit in a parent or guardian's duty to provide for the care of her child or dependent." *Id*. at *8. This Court should similarly decline to expand estoppel to Plaintiffs claims on these grounds.

Defendant relies on *Chan v. Charter Commc'ns Holding Co.* in an attempt to bolster its argument.[3] 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015); (Motion to Compel at p. 15). However, the *In re Ring LLC Privacy Litigation* court noted that *Chan* failed to address the important distinction between contracts for medical services and adhesion contracts for consumer goods in determining whether to apply estoppel in this context. 2021 WL 2621197, at *8. The difference between the two is recognized in *County of Contra Costa v. Kaiser Found. Health Plan*, where the court mentioned non-signatory arbitration cases were all "grounded in the authority of the signatory to contract for *medical services* on behalf of the nonsignatory." 47 Cal.App.4th 237, 243 (1996) (emphasis added). Defendant's authorities that it uses to frame its preexisting relationship argument, *Chan* and *Crowley*, both cite to *County of Contra Costa* without addressing this distinction.

---

[3] In *Chan*, the court noted that the plaintiffs' children are not parties, and "it is therefore irrelevant whether they agreed to arbitrate." *Chan*, 2015 WL 12655701, at *5. The court ultimately compelled the claims of plaintiff's spouse, who was a party, to arbitration. *Id*. Thus, *Chan* is irrelevant and not instructive for the purposes of determining whether Plaintiffs' claims should be compelled on estoppel grounds.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

9

*S.G. v. Epic Games, Inc.*, is also distinguishable. 2025 WL 2447456 (N.D. Cal. Aug. 26, 2025). As an initial matter, although not squarely addressed by the court, the plaintiffs' claims were directly related to their "in-game store" purchases, and prior to making those purchases, plaintiffs were explicitly asked to confirm acceptance of defendant's End User License Agreement ("EULA") which governed those purchases. *S.G.*, 2025 WL 2447456 at *1-2. Therefore, estoppel principles at times are more appropriately applied in instances where the plaintiffs' claims directly implicated the defendant's EULA, which contained the arbitration agreement. *See Namisnak*, 971 F.3d 1088, 1095 (9th Cir. 2020) (quoting *In re Henson*, 869 F.3d at 1060). Furthermore, in *S.G.*, the terms at issue "explicitly contemplate[d] a parent consenting to the minor's acceptance of the [EULA]":

> "TO ENTER INTO THIS LICENSE AGREEMENT, YOU MUST BE AN ADULT OF THE LEGAL AGE OF MAJORITY IN YOUR COUNTRY OF RESIDENCE ... IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT."

*S.G.*, 2025 WL 2447456 at *1, 5. The court compared this agreement to "waiver forms parents routinely sign on behalf of their children to allow them to participate in sports or other recreational activities." *Id.* at *5. Therefore, the court determined that specifically "in this context[,]" it was equitable to impose arbitration on plaintiffs. *Id*.

Here, Plaintiffs are in a materially different position than the *S.G.* plaintiffs as none of their claims implicate Roku's Terms, and those Terms contain no such explicit language that contemplates parents consenting on behalf of their minor children. In contrast, Roku's terms are explicit that they only apply to "YOU AND ROKU[.]" (Riediger Decl., ¶ 7, Ex. D at § 1.) And while Roku does point to the word "household" (*Id.*, Ex. C at pp. 1, 5) as a weak attempt to expand the scope of its separately provided Dispute Resolution Terms, this is far from an explicit grant of

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

consent from minor to parent akin to a waiver form. Accordingly, there is no similarly compelling reason why this Court should bind Plaintiffs as non-signatories to Roku's contract.

2.   <u>Roku cannot show that Plaintiffs "knowingly exploited" the contract in the way equitable estoppel requires.</u>

Roku's direct-benefits theory is that Plaintiffs directly benefited from their mother's Roku account by using streaming, and that equity prevents them from taking those benefits while avoiding arbitration. (Motion to Compel at pp. 17-18.) The equitable-estoppel principle Roku invokes is typically stated as preventing a litigant from "claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer*, 436 F.3d at 1101. But that doctrine targets non-signatories who are attempting to enforce contract rights or whose claims depend on contract terms.

The facts of *Comer* are instructive. As summarized by the court in *Langell v. Ideal Homes LLC*:

> "In *Comer v. Micor, Inc.*, the court held that estoppel could not bind a non-signatory to arbitration where that party did not knowingly exploit the agreement containing the arbitration clause. [*Comer*, 436 F.3d] at 1102. The non-signatory, an ERISA-plan participant, sued the managers of the plan for breach of fiduciary duty. *Id.* at 1100. The managers, who had an agreement with the plan's trustees containing an arbitration provision, argued that the non-signatory should be precluded from avoiding the burdens of the agreement (arbitration) because he was seeking to enjoy its benefits (a well-managed plan). *Id.* at 1101. The court disagreed. It held that the non-signatory, who neither sought to enforce the terms of the management agreement nor sued under its provisions, did not knowingly exploit that agreement and could not be estopped from avoiding arbitration. *Id.* at 1102."

2016 WL 8711704, at *5 (N.D. Cal. Nov. 18, 2016).

Here, as in *Comer*, Plaintiffs neither sought to enforce Roku's Terms to assert

their claims nor did they sue under the provisions of Roku's Terms, and did not knowingly exploit their mother's agreement with Roku. Plaintiffs did not actively participate in creating the Roku account at issue; Plaintiffs are minors and generally lack knowledge of contractual agreements[4]; and Roku's Terms did not confer a singular benefit on Plaintiffs outside them being passive participants to the agreement entered into by their mother. Thus, Plaintiffs cannot be estopped from avoiding arbitration. *Comer*, 436 F.3d at 1102 ("the insurmountable hurdle for [the managers], however, is that there is no evidence that [non-signatory] 'knowingly exploit[ed] the agreement[s] containing the arbitration clause[s] despite having never signed the agreement[s]'") (internal citation omitted); *see also Brown*, 2016 WL 9109112, at *7 (finding that non-signatory "was a passive participant" to the agreement and could not be compelled to arbitrate because "[t]here is nothing in the record to suggest that [p]laintiff knew about or inquired into the agreement between [d]efendant and [signatory]" and thus plaintiff "could not have knowingly exploited the agreement when he was not even aware there was an agreement in the first place"); *B.F. by & through Fields v. Amazon*, No. C19-910-RAJ-MLP, 2019 WL 9364164, at *6 (W.D. Wash. Oct. 21, 2019) ("as federal courts have noted, compelling any non-primary user of a particular service to arbitration under the theory of equitable estoppel would lead to absurd results, as even a casual visitor to a residence could be bound by an agreement without notice because any use of those services could constitute receipt of a direct benefit. . . .That is n[ot] the law . . . of this Circuit").

3.    <u>Intertwined claims estoppel is inapplicable in this context.</u>

Lastly, Defendant argues that Plaintiffs are required to arbitrate because their claims are intertwined with their mother's agreement with Roku. (Motion to Compel

---

[4] *See Berg v. Traylor*, 148 Cal.App.4th 809, 818 (2007) (discussing Cal. Fam. Code § 6710, stating that "[t]he law shields minors from their lack of judgment" and it is "the policy of the law to protect a minor against himself and his indiscretions and immaturity").

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

at p. 18.) Defendant's argument is misplaced as this theory of estoppel is completely inapplicable in this context.

"As the Ninth Circuit explained in *Comer*, where a defendant is invoking equitable estoppel against a nonsignatory, only the line of cases holding that nonsignatories may be compelled to arbitrate where they knowingly exploited the agreement containing the arbitration clause is relevant." *B.F. by & through Fields*, 2019 WL 9364164, at *5 (citing *Comer*, 436 F.3d at 1101). "The 'intertwined/close relationship' theory of equitable estoppel applies only where '*signatories* have been required to arbitrate claims brought by nonsignatories at the nonsignatories' insistence because of the close relationship between the entities involved.'" *Id*. (citing *Comer*, 436 F.3d at 1101). Accordingly, this Court should decline Defendant's "invitation to extend this theory to Plaintiff[s'] claims." *Id*.; *see also InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. SACV 11-1062 JVS (ANx), 2012 WL 12960766, at *4 (C.D. Cal. Dec. 7, 2012) ("Because the Bank is invoking equitable estoppel against a nonsignatory, only the ["knowingly exploits" line of cases] is relevant."); *Brown*, 2016 WL 9109112, at *6 ("Because this case involves a signatory [d]efendant attempting to bind a nonsignatory [p]laintiff, the [c]ourt focuses on the ["knowingly exploits"] type."); *Janvey v. Alguire*, 847 F.3d 231, 242 (5th Cir. 2017) (stating that "intertwined claims" theory "governs motions to compel arbitration when a signatory-plaintiff brings an action against a nonsignatory-defendant asserting claims dependent on a contract that includes an arbitration agreement" and does not apply "where a signatory-defendant seeks to compel arbitration with a nonsignatory-plaintiff").[5]

---

[5] Defendant's case that it cites in support of this argument, *Montoya v. Comcast Corporation*, is inapposite as the court compelled the non-signatory plaintiffs' claims to arbitration on "knowingly exploited" grounds, rather than relying on the "intertwined" theory. 2016 WL 5340651, at *6 (E.D. Cal. Sep. 23, 2016) ("[p]laintiffs have voluntarily accepted and knowingly exploited [d]efendant's services and must consent to the terms and conditions of the contract, including the arbitration provision").

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1

2          **C.     Delegation is improper where Plaintiffs did not agree to submit the
                     question of arbitrability to the arbitrator.**

3

4          Defendant argues that because Roku's Terms contain a delegation clause, the

5   arbitrability of this dispute is an issue for the arbitrator. (Motion to Compel at pp. 20-

6   22.) However, in making its argument, Defendant forgets the simple legal principle

7   that "[f]or a delegation clause to apply, the Supreme Court has held that the parties

8   must 'clearly agree to submit the question of arbitrability to arbitration,' otherwise

9   arbitrability is 'subject to independent review by the courts.'" *Houghton v. Polychain*

10  *Alchemy, LLC*, No. 24-7243, 2025 WL 2965204, at *3 (9th Cir. Oct. 21, 2025) (citing

11  *First Options of Chicago, Inc.*, 514 U.S. at 947). "Recently, the Supreme Court

12  reaffirmed those principles stating that arbitration 'is a matter of contract and

13  consent,' so 'courts should not assume that the parties agreed to arbitrate arbitrability

14  unless there is clear and unmistakable' evidence that they did so.'" *Id.* (citing

15  *Coinbase Inc.*, 602 U.S. at 145, 149) (brackets omitted from original). Thus, "a party

16  who has not agreed to arbitrate will normally have a right to the court's decision about

17  the merits of its dispute." *Coinbase Inc.*, 602 U.S. at 149 (citing *First Options of*

18  *Chicago, Inc.*, 514 U.S. at 942).

19          Defendant's argument regarding delegation clearly misses the mark as

20  Defendant does not, and cannot, demonstrate that Plaintiffs agreed to Roku's Dispute

21  Resolution Terms, nor cite to any explicit language (either in its own Terms or by

22  incorporation of the AAA Consumer Arbitration Rules) that clearly and unmistakably

23  delegate issues of arbitrability on behalf of non-signatories. (Motion at pp. 20-21).

24  That much is required. *See e.g. Houghton, LLC*, 2025 WL 2965204, at *4 ("the

25  [arbitration agreement] does not clearly and unmistakably delegate arbitrability for

26  non-signatories") (internal quotation omitted); *Kramer v. Toyota Motor Corp.*, 705

27  F.3d 1122, 1127 (9th Cir. 2013) ("[g]iven the absence of clear and unmistakable

28  PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
    TO COMPEL ARBITRATION

evidence that [p]laintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable"); *First Options of Chicago, Inc.*, 514 U.S. at 945-46 (same).

In contrast, Roku's Dispute Resolution Terms are clear that its provisions only apply to Roku and the signatory to the agreement. (Riediger Decl., Ex. D at §§ 1, 1.A.) ("REQUIRE YOU AND ROKU TO ARBITRATE CERTAIN CLAIMS"), ("These Dispute Resolution Terms apply to all Claims between *you and Roku*, including . . . claims related to the arbitrability") (emphasis added). Because Plaintiffs are not signatories of Roku's Terms, and because Defendant's theory of enforcing its arbitration provision rests on equitable estoppel principles applied to non-signatories, the decision regarding the arbitrability of this dispute rests squarely with this Court.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration should be denied in its entirety.

DATED: December 23, 2025          Respectfully submitted,

E.A.R.R. & E.A.R., by and through their
Guardian LYNETTE GONZALEZ,
individually and on behalf of similarly
situated individuals

By: */s/ Eugene Y. Turin*
One of Plaintiffs' Attorneys

Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
eturin@mcgpc.com
*Attorney for Plaintiffs and the Putative Class*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2      The undersigned counsel of record for Plaintiffs certifies that this brief contains

3  4727 words, which complies with the word limit of L.R. 11-6.1.

4

5

6  DATED: December 23, 2025          /s/ <u>*Eugene Y. Turin*</u>

7                                         Eugene Y. Turin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION