**PERKINS COIE LLP**
Eric J. Weiss, *pro hac vice*
EWeiss@perkinscoie.com
Mallory A. Gitt, *pro hac vice*
MGitt@perkinscoie.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: 206.359.8000
Facsimile: 206.359.9000

Gillian C. Kuhlmann, Bar No. 316241
GKuhlmann@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Lauren Trambley, Bar No. 340634
LTrambley@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
Victor Jih, Bar No. 186515
vjih@wsgr.com
Kelly H. Yin, Bar No. 328380
kyin@wsgr.com
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: 424.446.6900
Facsimile: 866.974.7329

Dylan G. Savage, Bar No. 310452
dsavage@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: 212.999.5800
Facsimile: 866.974.7329

Attorneys for Defendant Roku, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

E.A.R.R., et al.,

Plaintiffs,

v.

ROKU, INC.,

Defendant.

Case No. 5:25-cv-02474-JGB-DTB

**DEFENDANT ROKU, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: February 9, 2026
Time: 9:00 a.m.
Judge: Hon. Jesus G. Bernal
Crtm: 1

## TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs do not dispute that their mother agreed to Roku's terms and that a valid clickwrap agreement exists. .......... 2

B. Any one of multiple estoppel doctrines compels arbitration, and all of them apply here. .......... 3

1. Plaintiffs' preexisting "family" relationship with their mother justifies compelling arbitration. .......... 3

2. Plaintiffs directly benefited from their mother's agreement with Roku. .......... 6

3. Plaintiffs' claims are intertwined with their mother's agreement with Roku. .......... 8

C. Arbitrability is delegated to the arbitrator. .......... 11

D. Plaintiffs' policy arguments cannot override the FAA, and arbitration is an appropriate forum. .......... 11

III. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adzhikosyan v. AT&T Corporation. In*,
2021 WL 5982604 (C.D. Cal. Dec. 17, 2021) ....................7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................11, 12

*Atencio v. Bird Rides Inc.*,
2023 WL 8168955 (C.D. Cal. Nov. 3, 2023) ....................7

*Boucher v. Alliance Title Co., Inc.*,
127 Cal. App. 4th 262 (2005) ....................2, 9

*Brown v. Comcast Corp.*,
2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) ....................6

*Chan v. Charter Commc'ns Holding Co.*,
2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) ....................4, 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....................2, 11

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ....................12

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ....................6

*Corn v. Kohl's Corp.*,
2025 WL 1785943 (N.D. Cal. June 9, 2025) ....................7, 9

*Costa v. Kaiser Foundation Health Plan, Inc.*,
47 Cal. App. 4th 237 (1996) ....................4, 5, 6

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*,
158 Cal. App. 4th 1061 (2008) ....................4

*Dias v. Spartan Micro, Inc.*,
2024 WL 654579 (C.D. Cal. Jan. 8, 2024) ....................................................3

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017)..........................................................9, 10, 11

*Hofer v. Emley*,
2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ..........................................6, 7

*Houghton v. Polychain Alchemy*,
2025 WL 2965204 (9th Cir. Oct. 8, 2025)..................................................11

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022)......................................................................12

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013)....................................................................11

*Matthau v. Superior Ct.*,
151 Cal. App. 4th 593 (2007).......................................................................4

*Montoya v. Comcast Corp.*,
2016 WL 5340651 (E.D. Cal. Sept. 23, 2016)...........................................8, 9

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013)......................................................................4

*Namisnak v. Uber Techs., Inc.*,
971 F.3d 1088 (9th Cir. 2020)................................................................9, 10

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)......................................................................6

*In Re Ring LLC Priv. Litig.*, 2021 WL 2621197 (C.D. Cal. June 24, 2021).............5

*S. G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) ............................................3, 4, 9, 12

*Simple Traditions, Inc. v. Paychex, Inc.*,
2024 WL 4957225 (E.D. Cal. Dec. 3, 2024)..................................................6

*Tice v. Amazon.com, Inc.*,
845 F. App'x 535 (9th Cir. 2021) ........................................................ 5, 9

*Yeh v. Tesla, Inc.*,
2023 WL 6795414 (N.D. Cal. Oct. 12, 2023)........................................ 5, 7, 9

# I. INTRODUCTION

When a parent agrees to arbitrate disputes for products and services they acquired to benefit the entire household, that choice extends to their children's claims involving those same products and services. As Roku's motion showed, California's equitable estoppel doctrines reflect that reality: Three separate equitable doctrines—preexisting-relationship estoppel, direct-benefits estoppel, and intertwined-claims estoppel—each independently requires that Plaintiffs honor their mother's agreement to arbitrate disputes.

Plaintiffs' only response on the first doctrine—the preexisting relationship—is that a family relationship, standing alone, is insufficient to compel arbitration. Roku's point, though, is narrower and well settled: When a parent assents to terms governing a household service, and their children then use that service through the parent's account and sue based on alleged harms arising from that same account-based use, it is equitable to bind the children to the arbitration commitment that enabled the household's access.

It is similar with direct-benefits estoppel. Plaintiffs plead that they used their mother's account to access the streaming service they now place at issue. Equitable estoppel prevents the familiar maneuver of benefitting from an agreement while avoiding the agreement's obligations once a dispute arises. So Plaintiffs try to carve out a new exception: Estoppel, they say, cannot apply to statutory privacy claims. But courts applying California law routinely compel arbitration of statutory privacy and consumer-protection claims on estoppel grounds where the non-signatory has benefitted from the agreement requiring arbitration.

Plaintiffs' only real substantive bid to engage with Roku's motion is to point to cases like *Namisnak v. Uber Technologies, Inc.* and *In re Henson*. By targeting those cases, they effectively concede the motion because those decisions addressed only *one* of the three independent equitable doctrines: intertwined claims. And even if those cases were factually similar—which they are not—California law confirms

that intertwined-claims estoppel applies to more than just direct contract claims. A party may not make use of a contract containing an arbitration clause and then attempt to avoid the duties of that contract.

Accordingly, this Court should follow well-settled law and common sense and compel arbitration and stay this action.

## II. ARGUMENT

### A. Plaintiffs do not dispute that their mother agreed to Roku's terms and that a valid clickwrap agreement exists.

Plaintiffs do not dispute that Roku's terms are presented through a standard clickwrap process requiring affirmative assent, that their mother agreed to arbitrate claims in those terms, and that she did not opt out of arbitration. *See* ECF 30 ("Opp.") at 4–5. Roku has therefore met its burden on the threshold question: there is a valid arbitration agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Plaintiffs contend that Roku's terms apply solely to their mother, relying on the Dispute Resolution Terms' statement that the claims covered by arbitration are those "between you and Roku" and asserting that this language supersedes the Account Terms (which Plaintiffs mischaracterized as "prior terms"). Opp. at 5. This argument is unavailing for three reasons. First, the applicability of Roku's terms to Plaintiffs is governed by equitable estoppel, not by direct assent. The phrase "you and Roku" in the Dispute Resolution Terms identifies the contracting parties; it does not limit the scope of individuals who may be bound to arbitrate. If Plaintiffs' interpretation were correct, non-signatories could never be compelled to arbitrate—a position that is contrary to established law. *See Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 268 (2005) (recognizing five theories under which an arbitration clause may be enforced by or against a non-signatory). Second, in any event, the Dispute Resolution Terms are expressly incorporated into Roku's Account Terms, which provide that "these terms apply to . . . *anyone in your household that*

*uses your account and/or any linked Roku products*." ECF 27-1 ("Riediger Decl.") ¶ 6, Ex. C at p.1 & p.5 (emphasis added). This language clearly extends coverage to Plaintiffs. Third, Plaintiffs mischaracterize the Account Terms as a "prior" version of the Dispute Resolution Terms that were superseded by Roku's 2024 update to the Dispute Resolution Terms. Opp. at 5. That is wrong. The Account Terms from 2020 remain valid and incorporate the current Dispute Resolution Terms by reference. Riediger Decl. ¶ 6, Ex. C; *id.* ¶ 7, Ex. D. Thus, the superseding language in the Dispute Resolution Terms does not apply to the Account Terms. Moreover, Plaintiffs' narrow reading of Roku's terms is improper—the terms must be read "as a whole" to give effect to each provision, including the mother's agreement that the terms apply to household members. *See Dias v. Spartan Micro, Inc.*, 2024 WL 654579, at *11 (C.D. Cal. Jan. 8, 2024).

### B. Any one of multiple estoppel doctrines compels arbitration, and all of them apply here.

Under California law, any one of three equitable estoppel doctrines—preexisting relationship, direct benefits, or intertwined claims—compels arbitration. Each is independently sufficient; together, they make Plaintiffs' opposition to arbitration untenable. Plaintiffs' attempts to distinguish or limit these doctrines are unavailing, and their arguments are foreclosed by caselaw and their alleged facts.

#### 1. Plaintiffs' preexisting "family" relationship with their mother justifies compelling arbitration.

This Court should follow established precedent and compel arbitration because of a parent-child relationship. *See, e.g.*, *S. G.*, 796 F. Supp. 3d at 620–21. As Roku explained in its motion, the relationship between Plaintiffs and their mother makes it equitable to require arbitration of claims related to their mother's account and the Roku devices and services used under that account. ECF 27 at 16.

Plaintiffs assert—as a categorical rule—that a family relationship alone cannot justify compelling a non-signatory's claims to arbitration. Opp. at 8–9. But as this

Court has already recognized, California law in fact holds the opposite: "a nonsignatory can be compelled to arbitrate . . . where a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim," with a foremost example the "parent-child relationship." *Chan v. Charter Commc'ns Holding Co.*, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015) (Bernal, J.) (quoting *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1065, 1069–70 (2008)); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) ("In California, a nonsignatory to an agreement to arbitrate may be required to arbitrate [based on] a preexisting confidential relationship."); *Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 47 Cal. App. 4th 237, 242 (1996) (requiring the non-signatory to arbitrate because "a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement"); *Matthau v. Superior Ct.*, 151 Cal. App. 4th 593, 600 (2007) (same).

Plaintiffs attempt to establish a different rule by distinguishing or ignoring key authority fails. First, they do not—and cannot—distinguish *S. G. v. Epic Games, Inc.* In *S. G.*, the court compelled arbitration because "the preexisting relationship between [the son] and his father"—the signatory to the contract—"makes it 'equitable' to impose the duty to arbitrate upon [the son] even if he did not sign the EULA himself." 796 F. Supp. 3d at 621. Yet Plaintiffs argue that *S. G.* does not apply because Epic's terms contemplated that a parent would consent for a minor and Roku's terms do not. Opp. at 10. This is incorrect. The court concluded that the parent-child relationship warranted compelling arbitration, not that contractual language required it. And in any event, Roku's Account Terms contemplate the same thing: a Roku accountholder must be at least 18 years old and agree that the Account Terms (which incorporate the Dispute Resolution Terms) "apply to . . . anyone in your household that uses your account and/or any linked Roku products"—including children. Riediger Decl. ¶ 6, Ex. C at p.1.

Second, Plaintiffs' reliance on *In re Ring LLC Privacy Litigation* is misplaced. *See* Opp. at 8–9. The *Ring* court declined to compel arbitration because the non-signatory children were only "passively exposed" to their parents' Ring cameras. 2021 WL 2621197, at *7–8 (C.D. Cal. Jun. 24, 2021). Plaintiffs here, on the other hand, admit that they "have access to, and use, multiple Roku enabled devices through their Guardian's Roku account, including a Roku streaming stick and multiple Roku TVs," to watch content on Roku's streaming platform. Compl. ¶¶ 48–49. So whereas the *Ring* plaintiffs did not use the devices, Plaintiffs actively accessed and used Roku devices and services, directly benefiting from their mother's agreement with Roku.

*Yeh v. Tesla, Inc.*—cited in Roku's motion and ignored completely in Plaintiffs' opposition—shows why *Ring* does not apply. Highlighting the *Ring* court's "gloss" on California estoppel law in the "parent-child context," the *Tesla* court compelled arbitration because the father's Tesla purchase "was, at least in part, to benefit and provide care for his child." 2023 WL 6795414, at *8 (N.D. Cal. Oct. 12, 2023). The facts here are nearly identical, with Plaintiffs' mother agreeing to Roku's terms for a household device that her children used.

Plaintiffs urge the Court to adopt the *Ring* court's "implicit" distinction between contracts involving "necessities like education or medical care" versus contracts for consumer goods. 2021 WL 2621197, at *8. However, that distinction was based on an erroneous overreading of cases like *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.*, 47 Cal. App. 4th 237 (1996). Although California courts have recognized that signatories may bind non-signatories to contracts "for medical services," *id.* at 243, those are not the only types of contracts to which a non-signatory may be bound. Further, even if the Court were to agree with Plaintiffs' construction, *Ring* is contrary to the vast majority of case law in this area, including a Ninth Circuit decision and a prior decision by this Court. *See Tice v. Amazon.com, Inc.*, 845 F. App'x 535, 537 (9th Cir. 2021); *Chan*, 2015 WL 12655701,

at *5. California law makes no such distinction, and this Court should not either.

**2. Plaintiffs directly benefited from their mother's agreement with Roku.**

Plaintiffs do not credibly dispute that they knowingly received the benefits of their mother's agreement. In fact, they admit in their Complaint that they used their mother's account to access Roku's streaming platform. *See* Compl. ¶¶ 48–49. "The Ninth Circuit has repeatedly expressed that equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Simple Traditions, Inc. v. Paychex, Inc.*, 2024 WL 4957225, at *6 (E.D. Cal. Dec. 3, 2024) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (same); *Hofer v. Emley*, 2019 WL 4575389, at *6 (N.D. Cal. Sept. 20, 2019) (same); *Cty. of Contra Costa*, 47 Cal. App. 4th at 242 (same).

None of the authority on which Plaintiffs rely is contrary or persuasive. Similar to *Ring*, the court did not compel arbitration in *Comer v. Micor, Inc.* because the plaintiff was merely a "passive participant" in the ERISA plan. *Id.* Plaintiffs here are not passive participants; they are active users who received the benefits of Roku products and services. Compl. ¶¶ 48–49.

*Brown v. Comcast Corp.* is even farther afield. The non-signatory plaintiff in *Brown* was a guest who stayed with a friend—the Comcast accountholder—for "no more than a few months" and later received automated phone calls from Comcast. 2016 WL 9109112, at *2–4 (C.D. Cal. Aug. 12, 2016). The court declined to compel arbitration for two reasons. First, the plaintiff's friendship with the accountholder did not constitute a legally recognized preexisting relationship under California law. *Id.* at *4 (rejecting the "comparison" of the friendship to a "parent-child relationship" because it was "no way comparable to a relationship formed by birth"). Second, the plaintiff did not take an "affirmative step" to exploit the benefits of the agreement and was, like the plaintiffs in *Ring* and *Comer*, merely a "passive participant." *Id.* at

*7–8. By contrast, Plaintiffs' relationship with the accountholder—their mother—is a preexisting relationship "formed by birth." And Plaintiffs are not "passive" participants; they actively used their mother's account to access the Roku services.

The same is true of *Adzhikosyan v. AT&T Corporation*. In that case, the plaintiff called AT&T on his mother's behalf to seek discounts on her account. 2021 WL 5982604, at *1 (C.D. Cal. Dec. 17, 2021). He brought a claim for the allegedly unlawful recording of that call, and AT&T moved to compel arbitration based on the mother's agreement. *Id.* at *1, *5. The court declined to compel arbitration because there were no "allegations or evidence that Adzhikosyan used his mother's account or reaped its benefits." *Id.* at *7. In reaching that decision, the *Adzhikosyan* court also relied on *Ring*, which, as explained above, is out of step with the Ninth Circuit (*Tice*) and this Court (*Chan*). Moreover, it is inapplicable here because Plaintiffs admit they used their mother's Roku account to access and use Roku's streaming platform.

Plaintiffs not only cite off-base authority, they also failed to address *on-point* authority Roku cites. For example, in *Corn v. Kohl's Corp.*, the court compelled to arbitration the non-signatory spouse's claims because she "received benefits flowing directly from her husband's Kohl's Reward Agreement." 2025 WL 1785943, at *2 (N.D. Cal. June 9, 2025). Similarly, in *Hofer*, the court compelled to arbitration the non-signatory brother's claims because he "received the only direct benefit flowing from the Agreement"—riding in the rental car. 2019 WL 4575389, at *14; *see also id.* at *7 (distinguishing the passive participants in *Brown* and *Comer*). And in *Atencio v. Bird Rides Inc.*, the court compelled to arbitration the non-signatory mother's claims because she "received the primary benefit of the Agreement: the ability to use the rental scooter" via her son's account. 2023 WL 8168955, at *2 (C.D. Cal. Nov. 3, 2023); *see also id.* at *3 (explaining that *B.F. v. Amazon*, on which Plaintiffs rely, is inapplicable because it applies Washington, not California, law).[1]

---

[1] Plaintiffs also briefly argue that they cannot be compelled to arbitrate because they "are minors and generally lack knowledge of the contracts." Opp. at 12. On the contrary, "[u]nder California law, the infancy defense may not be used inequitably to

### 3. Plaintiffs' claims are intertwined with their mother's agreement with Roku.

Plaintiffs are mistaken on both the scope and application of intertwined-claims estoppel: (1) the doctrine is not limited to cases where a non-signatory seeks to compel arbitration against a signatory, and (2) it is not restricted to contract claims but applies equally to statutory claims.

Plaintiffs incorrectly contend that intertwined-claims estoppel applies only when a non-signatory seeks to compel arbitration against a signatory. Opp. at 12–13. The opposite is true under California law: "Non-signatories are also compelled to arbitrate when the claims of the non-signatory are intertwined with the underlying contractual obligations." *Montoya v. Comcast Corp.*, 2016 WL 5340651, at *5 (E.D. Cal. Sept. 23, 2016). Plaintiffs downplay the significance of *Montoya* by burying it in a footnote because it forecloses their position. Opp. at 13 n.5.

In *Montoya*, the plaintiffs were non-signatory household members that "were in regular use of [Comcast's] services" and brought privacy claims against Comcast for allowing third parties to access their personally identifying information. 2016 WL 5340651, at *2, *4. The court compelled arbitration because (1) "Plaintiffs' admitted use of Defendant's services demonstrates Plaintiffs knowingly exploited the agreement for Defendant's services," *id.* at *5, and (2) by "predicating" their claims "on the direct receipt of services from Defendant, Plaintiffs presume the existence of the underlying contract," *id.* at *6. Therefore, the plaintiffs' claims were "intertwined with the contract" because they sought "to enforce the benefits of the contract (cable/internet services and protection of personal information) while simultaneously seeking to avoid the obligations of the contract (arbitration of disputes.)." *Id.* The same is true here. Plaintiffs' use of Roku's products and services shows they "knowingly exploited" their mother's agreement, and Plaintiffs' privacy claims stem

---

retain the benefits of a contract while reneging on the obligations attached to that benefit." *Tesla*, 2023 WL 6795414, at *9 (N.D. Cal. Oct. 12, 2023).

from their receipt of Roku's services, which are accessed only through an account governed by their mother's agreement with Roku. *See* Compl. ¶¶ 48–49.

Likewise, in *Tesla*, the court concluded "it would be inequitable to permit [the non-signatory child] to litigate claims that are so closely intertwined with the claims his father agreed to arbitrate and therefore, that [child] is bound by the arbitration provision." *Tesla*, 2023 WL 6795414, at *8. The court compelled the non-signatory child to arbitrate statutory privacy claims under intertwined-claims estoppel—disproving Plaintiffs' assertion that this doctrine is only applicable to signatories. *Id.*

Plaintiffs also assert that estoppel can apply only when a non-signatory seeks "to enforce contract rights" and not when they assert statutory claims, as Plaintiffs do. Opp. at 11–14. Not so. Courts routinely compel to arbitration statutory claims under equitable estoppel. *See, e.g.*, *Tice*, 845 F. App'x at 537 (concluding that non-signatory's statutory CIPA claim should have been compelled to arbitration); *Tesla*, 2023 WL 6795414, at *1 (compelling one-year-old's statutory privacy claims to arbitration); *Montoya*, 2016 WL 5340651, at *5 (compelling household members' statutory privacy claims to arbitration); *Corn*, 2025 WL 1785943, at *2 (compelling wife's statutory consumer-protection claims to arbitration); *S. G.*, 796 F. Supp. 3d at 621 (compelling child's statutory consumer-protection claims to arbitration).

Plaintiffs seem to base their broad proposition on cases that focus exclusively on intertwined-claims estoppel. One way that doctrine provides a basis for compelling arbitration is when a non-signatory pursues claims on the contract itself. *See Namisnak*, 971 F.3d 1095; *Henson*, 869 F.3d at 1059. But it is not limited to only direct contract claims. California law confirms that intertwined-claims estoppel can support compelling arbitration of more than just direct contract claims. *See, e.g.*, *Boucher*, 127 Cal. App. 4th at 272 ("That the claims are cast in tort rather than contract does not avoid the arbitration clause. . . . The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be

resolved.”). And in any event, multiple forms of estoppel apply here.

*Namisnak v. Uber Technologies, Inc.* does little to help Plaintiffs’ case. *See* 971 F.3d 1088 (9th Cir. 2020). At the outset, *Namisnak* does not address preexisting-relationship or direct-benefits estoppel; it concerns *only* the intertwined-claims theory of estoppel. *Id.* at 1094–95 (“[T]he one Uber seeks to apply here . . . [is] when there are ‘claims that are dependent upon or inextricably intertwined with the obligations imposed by the contract containing the arbitration clause.’”). The *Namisnak* plaintiffs had no preexisting relationship with an Uber account holder; in fact, there was no signatory at all who agreed to arbitrate. Nor did they receive any benefits from Uber because they never rode in an Uber. *Id.* at 1095.

Rather, Uber argued that the plaintiffs’ ADA discrimination claims should be compelled to arbitration because they would have signed the terms in the absence of discrimination. *Id.* The focus of the court’s analysis was therefore that the plaintiffs’ claim did not require that they or anyone use Uber’s services or agree to its terms; their statutory claim was completely independent of Uber’s contract. *Id.* Plaintiffs’ CIPA and ECPA claims here, however, would not exist without their use of Roku’s services subject to their mother’s underlying agreement. To be sure, *Namisnak* spoke broadly about the claims being “fully viable without any reference to” Uber’s terms. *Id.* But a non-signatory suing on the contract itself is just one instance in which intertwined-claims estoppel can apply; as shown in the many other cited cases, there are other avenues for applying estoppel to non-signatories.

*In re Henson*, on which *Namisnak* relies, is equally unavailing because it likewise relied exclusively on intertwined estoppel and involved a non-signatory seeking to compel arbitration. 869 F.3d 1052, 1059 (9th Cir. 2017). There, a Verizon subscriber sued a third-party advertiser for unlawful data collection, and the advertiser tried to compel arbitration by invoking an arbitration agreement between the subscriber and Verizon. *Id.* at 1056–57. The Ninth Circuit concluded that the subscriber’s claims for the third party’s actions had “nothing to do” with the Verizon

agreement because they did not arise from that agreement. *Id.* at 1061. Again, Plaintiffs' claims exist only because they accessed and used Roku's streaming platform via their mother's account, which is governed by an arbitration agreement.

**C. Arbitrability is delegated to the arbitrator.**

Plaintiffs assert that delegation to the arbitrator is invalid because they never personally agreed to arbitrate and Roku's terms do not explicitly delegate on behalf of non-signatories. Opp. at 14–15. But Plaintiffs' assent to Roku's terms is not required because they are bound by their mother's arbitration agreement and its delegation clause by estoppel. The very cases Plaintiffs cite for the proposition that an arbitration agreement must "clearly and unmistakably delegate issues of arbitrability on behalf of non-signatories" consider equitable estoppel as an *alternative* to an explicit delegation of arbitrability. *See Houghton v. Polychain Alchemy*, 2025 WL 2965204, at *4 (9th Cir. Oct. 8, 2025) (unpublished); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127–28 (9th Cir. 2013).

Regardless, even if the Court decides to address arbitrability rather than delegating the issue to an arbitrator, the only question is whether Plaintiffs' claims fall within the scope of the arbitration provision. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Roku's terms cover claims "based in contract, tort, statute, fraud, misrepresentation, or any other legal theory," including specifically claims addressing "any use or disclosure of your information or information about you." Riediger Decl. ¶ 7, Ex. D at § 1.A. Those enumerated claims are precisely the type of privacy claims Plaintiffs assert here.

**D. Plaintiffs' policy arguments cannot override the FAA, and arbitration is an appropriate forum.**

Plaintiffs' policy objections cannot override the FAA, which mandates "enforcement of private agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Plaintiffs contend that compelling minors to arbitrate would produce "absurd results," Opp. at 3, but accepting Plaintiffs'

position would create a loophole for users to avoid arbitration by accessing products or services through another person's account—an outcome that would undermine consumer agreements nationwide. *See S. G.*, 796 F. Supp. 3d at 621 (highlighting this specific concern). Roku provided an opt-out mechanism, Plaintiffs' mother chose not to exercise it, and she agreed that the Account Terms, including the Dispute Resolution Terms, applied to household members who use her account. Plaintiffs allege that they in fact accessed and used Roku devices and services through that account. Compl. ¶¶ 48–49. Compelling arbitration is both equitable and fair.

Nor would arbitration deprive Plaintiffs of a forum or a remedy, as they imply. Arbitration is fair and efficient; preserves substantive rights and remedies; hastens resolution; and reduces the financial and emotional burden that prolonged litigation imposes. *See AT&T Mobility LLC*, 563 U.S. at 352 (holding that consumers were "better off" in arbitration than in a class action, which "could take months, if not years, and which may merely yield an opportunity to submit a claim for recovery of a small percentage of a few dollars."); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023) (identifying the "benefits of arbitration," including "efficiency, less expense, less intrusive discovery, and the like").

## III. CONCLUSION

For the foregoing reasons, Roku respectfully requests that the Court compel arbitration and stay this action.[2]

[2] To the extent the Court concludes that factual issues remain, it should order limited discovery to address them. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022) ("[T]he FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary.").

Dated: January 27, 2026

**PERKINS COIE LLP**

By: *s/ Eric J. Weiss*

Eric J. Weiss, *pro hac vice*
Mallory A. Gitt, *pro hac vice*
Gillian C. Kuhlmann, Bar No. 316241
Lauren Trambley, Bar No. 340634

Attorneys for Defendant Roku, Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant Roku, Inc. certifies that this brief contains 4,038 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 27, 2026

*s/ Eric J. Weiss*
Eric J. Weiss, *pro hac vice*